Good morning. My name is Andrew Kahn. I'm with the law firm of McCracken, Stemmer, Menbowin, and Hulsberry representing the Culinary Workers Union. This case involves three decisions of the District Court for your review. I'll take them in chronological order. The first was the District Court's grant of summary judgment against the Venetian on its lobbying claims, its claims that the union torturously interfered with its business advantage by lobbying the county commissioners concerning the development agreement that the Venetian was seeking. This summary judgment was quite proper under a long line of Ninth Circuit cases and Supreme Court cases involving the Noor-Pennington Doctrine, the doctrine explaining and applying the First Amendment to tort claims arising from petitioning activities. These cases make it clear that courts do not police speech made in legislative and political arenas as opposed to speech in judicial fora. Here what you had was Venetians seeking a legislative type decision, a special agreement from the county commissioners so that it would not have to follow the normal development procedures set out in the county codes, which require final approval of a traffic study before you can start building your new resort. Now, there are no statutory standards for how such development agreements should be entered into. It's a discretionary decision by elected officials. Now, the union also But, again, the statutory standards here are only slightly more clarified. Any concern over public welfare or harmony with the general purpose of the comprehensive plan or harmony with the objectives of the zoning ordinance, those are all valid grounds for rejecting a variance under Clark County Ordinance. So, again, you have a decision that is not adjudicative in nature. It's legislative or political. You don't have a swearing of witnesses. You don't have cross-examination. You have the same body which creates the standards, ultimately making the decision on the variance very different than judicial type decision making. Did the district court consider all of this? The district court was presented with the case law by our side concerning the Norr Pennington Doctrine and presented with the kinds of decisions that we were lobbying on and the Venetian in its opposition never argued, well, this is really a judicial type decision. That's an argument you're seeing for the first time on appeal from the Venetian that this was somehow a judicial type of decision. Under this circuit's case law, it's incumbent on the plaintiff in the complaint to show how an exception to Norr Pennington exists. That's your obligation. No. I'm not the plaintiff. I'm the defendant. I'm the culinary union. It's incumbent on the Venetian. Right. Well, that's probably your argument. It's confusing because I'm sorry I didn't get you who you represented. Okay. No problem. The thing that's happened here was that Venetian didn't do it in the complaint, nor did they do it at the summary judgment stage in preparing their opposition. And then approximately a year and a half later, we get to oral argument and you don't see an explanation there at oral argument in 1999 of how the sham exception to the Norr Pennington Doctrine is met. So you have had plenty of chances given the Venetian to get around the there was an exception to the Norr Pennington Doctrine, three chances they didn't meet their burden at any of those stages. This circuit normally only allows a plaintiff attacking lobbying activities one chance in the complaint. That's what I was wondering. So you would say there's no point in remanding to let them now try to flesh out their sham arguments because they had their chance and you only get the one shot? Exactly. Under franchise realty and under coddle that this circuit's prior decisions in order to prevent these sorts of claims from deterring speech that this court insists on pleading expressly how you're meeting the sham exception to Norr Pennington if you're going to sue someone over how they lobbied elected officials. And there is plenty of And it's also part of this court's previous decision in another Venetian case concerning the access to the public sidewalk where this court again went through how there was lobbying of the county commissioners about do we have a development agreement. Now there was a trial on stipulated facts here as I understand. That's the second of the decisions that are before you today. The trial on stipulated facts. But the issue of Norr Pennington was decided on what a summary judgment prior to that trial and stipulated facts. The other important thing finally to conclude on the Norr Pennington issue was even if you take the view that the county was making some sort of quasi judicial decisions, the Venetian would have had to have pled to you and to the court below that the union's lobbying was objectively baseless, that it was frivolous in its content. But if you look at what we were lobbying about, we were simply saying to the county commissioners that their own staff was right about two key issues about. Don, I'm completely confused as to what you're doing. Who do you represent? I represent the culinary union. You're standing up as an appellant and you're arguing that the court did the right thing. But there's the cross appeal, right? Yes. So you're pursuing the cross appeal. I'm arguing both simultaneously, Your Honor. Are you defending your win first? I am, Your Honor. I'm going in chronological order. And it's very confusing. Okay. I apologize. Appellants, people usually stand up and they say, I'm here to attack something. Here's what somebody did wrong. And you stand up and say, we're going to do the cross appeal first. I don't know. Maybe you've sorted this out in some way, but it's lost me. I apologize, Your Honor. If your court would prefer, I'll get up here and attack the one decision that was against me. Figure it out. And it seems like what you're saying is the district court was perfectly proper when it ruled that everything that the union did was protected by Noor Pennington. You're saying that's absolutely dandy. That's exactly right. That's the first of the three decisions. You're foreseeing us saying, well, they should have detailed in their complaint with specificity exactly how the sham exception would alter that result. They didn't do it. And so you're saying to the appellate court, don't remand and give them a chance to do it because they already had their chance. Exactly, Your Honor. And so the decision made up of Noor Pennington was correct. If you were trying to affect lobbying for legislative changes and you're saying and it may or may not apply to as great extent, at least if there were judicial determinations and the licensing board, apparently when they're going to grant a license or place conditions on them, maybe acting in an adjudicatory manner as opposed to a legislative manner. But if so, the plaintiff has to allege all of this. Exactly, Your Honor. And this isn't a licensing board. This is a development decision being made by the county commission. And they have very broad standards. And my point is simply that of the first of three decisions, we believe the district court acted correctly. The second of which did this apply to the tort claim for interference with prospective business advantage? The district court's summary judgment applied to all three claims, which in the three in this case brought by the Venetian are that the union breached the no strike clause, that the union breached the implied covenant of good faith and fair dealing, and that we tortiously interfered with their respective business advantage. And so the district court noted that the First Amendment exists as a defense on all three types of claims and granted a summary judgment on the Noor Pennington issue relatively early on in the case. Still two years after the complaint had been filed. But that left then the breach of contract and breach of the implied covenant claims, didn't it? It left portions of that. And then the district court went on to hold a trial based on a very extensive stipulated record concerning the no strike clause claim. And there the issue presented, and again, I apologize, but I will argue in favor of what the district court did. Refusing to respond to arguments not yet made. Well, if you'd like, Your Honor, I can reserve time and come back and take the question. Well, I think we finally got you figured out. But I think that. I don't. If you want to continue to confuse me, go right ahead. I mean, I've never heard somebody stand up before and respond to arguments that haven't been made yet in oral arguments. Go ahead. Does that make any sense to have a response argument before the original? Well, why don't I reserve time after I then argue? You already argued on the one that you prevailed on. Yes. So now you're going to the ones that you lost. I will go to the one issue we lost on, which is the denial of our motion to compel arbitration. The district court construed the agreement as not not covering the arbitration agreement is not covering implied covenant claims. And if you look at the Steelworkers Trilogy and you look at this court's decision in Granite Rock, implied promises are grist for the arbitral mill. They are standard part of what labor arbitrators address. So the district court erred in not applying this well-established body of law to the very broad arbitration clause that we have in our agreement. What would be your claim? What would be the other side's claims for breach of the implied covenant? And how would they differ from its claims for breach of the express provision regarding Piketty? Your Honor, I don't think that there are significant differences in terms of the conduct of the union. They are arguing the same conduct that violated the no strike clause also violated the implied covenant. Why do you want to pull them into arbitration when you've got the district court throughout the breach of covenant, implied covenant, along with breach of the express provision? Well, because, Your Honor, the district court has not thrown out the implied covenant claim. An implied covenant claim gets into the questions of did we act in good faith? And it's our view that a labor arbitrator. And that's still pending before the district court? That's still pending before the district court. And it's our view that a labor arbitrator has the expertise to much better, much more expertise than the district court to assess whether a union acts in good faith or bad faith when it engages in speech about an employer. Because that's the conduct we're sued over is engaging in speech about this employer. Okay, but the exemption is on section 2201 from arbitration, right? That specifically is exempted, correct? No strike clause is specifically exempted from arbitration. All right, and so is it your position, then, that that has to be read very narrowly and what you're talking about doesn't fall within that exemption? Exactly. Our position is that the normal presumption of arbitration must apply to everything except for claims specifically accepted from the arbitration clause. But instead, what the Venetian argued as well, because there's overlap in facts, then, therefore, we get the same exemption. And there is no case law that has been cited in support of that. And in fact, the Supreme Court in the Dean Witter versus Byrd decision held that overlapping between arbitral and non-arbitral issues is not enough to defeat arbitration. And accordingly, the district court erred in not ordering arbitration of the remaining claim or the implied covenant claim. I think it's important to emphasize that the horrific effects on labor relations that will ensue if you let either an employer or a union drag the other into court, into federal court, over an implied covenant claim, those sorts of claims are very nebulous, can be brought any time one party or the other is upset with the other's speech. And let me assure you, in labor relations, we get upset at each other all the time. And I believe the courts will be ill-affected if this decision is allowed to stand, and you can avoid arbitrating your claim of a breach of the implied covenant. So before the arbitrator, you would say, well, sure, we did all of this stuff, which the other side calls guerrilla warfare or guerrilla tactics. But it's all protected by free speech. That's what your pitch to the arbitrator would be? That would be one major part of our pitch. The other part of our pitch would be that we did not act in bad faith, that essentially the employer acted in bad faith, and we were merely responding to their claim. What would you say are unique in the labor relations field to experienced arbitrators to make those decisions? This case involves a good deal of the past practice of the industry and the parties, and that's something that an arbitrator is much more expert on. Thank you. Thank you, Counsel. May it please the Court. David Frederick of Lyell, Sawyer & Collins, on behalf of Las Vegas Sands, Inc. Let me try to give the Court a roadmap as to what I'm going to do. Thank you. Convex before detail. Go ahead. I'm going to behave as an appellee, or a respondent first, and deal with the one argument that the culinary is making as an appellant. Then I'll go on to the two arguments that are ours on the cross appeal. The culinary's appeal has to do with the district court's refusal to compel arbitration of the implied covenant claim. The important point to note here is arbitration is a matter of contract, and this contract, the collective bargaining agreement, calls for arbitration of disputes, but only certain disputes. It does not call for the arbitration of claims. The dispute here is over Section 2201 of the contract. That is a dispute that is expressly accepted from the arbitration provision, so that the question of express and implied obligations created by 2201, and the party's dispute over that, is expressly accepted from the arbitration clause. And you don't need to look any further than the culinary's own cases to recognize that the broad scope of arbitrability that the culinary is arguing here goes away when you have a clause that expressly accepts the dispute in question from arbitration as we like here. The clearest example is the Gelbin Meat Company case, in which it discusses this point at length, that the court must go on to consider substantive provisions of a contract when there is an exception from the arbitration clause. There is a second reason why this dispute is not covered by arbitration, and that is that you only get to arbitration under the contract with respect to a dispute that has not been resolved by the board of adjustment that was created by the contract. The culinary never took this dispute to the board of adjustment, so consequently there is no contractual right to arbitration here. You don't get to that. This isn't a question of not filing the right forms or not filing them on time or anything like that. This is a question of what the parties agreed to arbitrate. And the only thing they agreed to arbitrate was disputes not resolved by the board of adjustment. That didn't happen here. Let me move on to deal with the first of LVSI's arguments on the cross appeal, and that has to do with the Nora Pennington issue. The first thing to understand about this is that the Nora Pennington issue arose below in two very peculiar contexts. One, there was no discovery whatsoever. It is a decision rendered by the district court that holds that legislative activities are absolutely privileged. No discovery was taken. No discovery was before the court. It is an absolute privilege ruling. The second important thing is that when the culinary tells you today about what we didn't raise below, there's a very good reason for that. And that is that the one authority that relied on by the district court, the Cottle case, never appeared below until oral argument on a summary judgment motion. The culinary never cited it. It was never briefed. Consequently, we never responded to it. Now, what the district court has said is legislative lobbying is absolutely privileged. I submit in this case that's wrong for three reasons. The first reason is what was done below, the lobbying that was done below, was not, in fact, legislative lobbying. The principle may be correct, but you're saying that the facts here show that there was not lobbying before a legislative body. Well, I can re- I'm saying both. First of all, this is not legislative lobbying. And again, you don't have to look any further than the culinary's own cases. Specifically, the Zamsky case. And tell me again how, why you didn't, with specificity in the district court, I guess anticipate, nor Pennington, and then assert or allege with specificity something that would support your sham exception? Well, that's another slight misrepresentation to the court. If you look at our complaint, which is found in the appellant's opening excerpt of records, at tab one, and you start at the bottom of page three, and you go over to, it's pages three and four on the top line on page five, you will, in fact, see the specific allegations of what we allege was done improperly for the sham purpose of delaying approval and increasing the expense of LVSI with respect to the approval of the new facility. And on notice pleading, I guess you'd say this is sufficient to bring to the attention of everybody that we're going to be relying on the sham exception to nor Pennington. In my opinion, yes, it does. Now, if you ask me, is the word sham in there? No. What it does is alleges what we believe the case law from this circuit requires, which is the specific facts of what was done with respect to the lobbying activity. Yeah. The legal doctrine, of course, is supplied by the law. And to my knowledge, there's no obligation to allege legal conclusions. What you need to do is allege the specific facts. And those facts are, in fact, alleged. Okay. Now, so your beef with the district court is that the district judge said nor Pennington protects all of this activity. I think it protects all of this activity, but it protects it. Absolutely. Yeah. Okay. There is. And you're saying that what's wrong with that is summary judgment was improperly granted because there are tribal issues of fact, I guess, as to whether the activities were really a sham and it wasn't proper legislative lobbying that's protected by nor Pennington. There are three tribal issues of fact. All right. One of them is the one you raise. Did the culinary genuinely intend for permission to build this facility to be denied by Clark County? Or did they have another purpose in mind? That's the sham one. The second tribal issue of fact is whether the lobbying that they were doing was, in fact, legislative. Okay. The third one is whether or not the culinary in the provisions of the collective bargaining agreement, specifically 2201, waived its First Amendment protection for this kind of activity under the Leonard decision of this court. Well, your complaint was met by a motion for summary judgment in which the union asserted nor Pennington. And at that point, it was incumbent upon you to come forth in specifics with your evidence that the sham exception would be applicable. And you didn't do it except for the peculiar fact that this was a quote unquote summary judgment that was rendered with no discovery. Did you ask for discovery? What happened was you asked for discovery? Did you ask for discovery? No. For this reason, this was a summary of judgment motion brought into the case on the entire complaint. There were a variety of different arguments. There was an agreement entered into to stay discovery pending the resolution of that summary judgment motion. At the time of the oral argument on the summary judgment was when Cottle, the Cottle case and this claim of absolute privilege for lobbying activities first appeared. The judge accepted Cottle, entered the order, the summary judgment order, which said, unlike his order denying other portions of the summary judgment motion, as to those he said, you can renew your motion after discovery. With respect to the nor Pennington ruling, he didn't allow any opportunity to renew the question after discovery. It was an absolute ruling made with no discovery. Now, the reason why I say this is legislative is not legislative activity is in the Zemanski case. It carefully distinguishes. Where did you make these three arguments to the district court for the district court as you say, blew it and said it's nor Pennington and that's the end of it? Where did you make these three arguments in connection with the summary judgment motion? Well, the opposition to our summary judgment motion. Your opposition to their summary judgment motion. And now I have to I have to I have to tell you that I'm asking where did you make the three arguments in connection with the summary judgment motion that you're now saying? I cannot assure you that you did the three arguments that I make in opposition to Cottle were made below. And the reason why I say that is, again, Cottle didn't arrive on the scene until the oral argument. There was opposition made to nor Pennington. But as I say, the basis for the district court's ruling was never brief. And what did you say during the oral argument about the Cottle case? My recollection is that the argument was made. This was not legislative legislative type lobbying that was talked about. I honestly do not recall as to whether or not there was an argument made with respect to waiver. I think it may have been in our papers, but I cannot honestly recall whether it was or not. Now, the problem that you get into is, as Zemanski points out, legislative activity occurs when a governmental body adopts a master plan or zoning ordinances or other measures of general applicability. When you move to the consideration of specific projects for specific individuals and entities, that is an executive decision, an administrative decision, which is not absolutely privileged. In addition to that, you have the Cottle decision itself, which makes it clear where you have a governmental body that, in fact, operates under standards requiring notice, hearing, evidence, and subject to review for substantial evidence, you don't have a legislative judgment. You don't have the unfettered discretion that the culinary is arguing here. That's the reason why we claim that this is not, in fact, legislative lobbying. Now, even if it was legislative lobbying, however, both Cottle and the U.S. Supreme Court recognize that there is no absolute privilege. Cottle talks about sham in great length. Yes, it does. Cottle talks about sham, and it recognizes that in the legislative context, the sham exception may be narrower, but it's not nonexistent. And in this case, I respectfully suggest that the sham exception is a very critical issue. That's why I was asking precisely where it was that you told the district court, we're relying on this sham exception. So far as I can tell, the only opposition to Knorr-Pennington, and you don't even mention Knorr-Pennington in your opposition to summary judgment, appears at your tab 27, I think it is, at page 24. On part D, you talk about the tortious interference claim. It, you didn't use sequential ERs, so it's hard to, but it's tab 27, page 24 of your excerpts. No, that's the union. Again, everybody's all mixed up here. That's the union's excerpts. Yeah, I'm, one of my concerns is whether we are dealing with the union's torturing. It argued Knorr-Pennington, and you really didn't have any substantial opposition to Knorr-Pennington. Have you got their excerpts of record tab 27? Yeah. Page 24, section D. One of my concerns, I want to make, there are several summary judgment motions that were made below, and I want to make certain, number one, that we were dealing with a parallel. Okay, you don't have to. And that's one of my concerns. As I say, I know for a fact that the ultimate debate, which centered on the Cottle case, arrived very late. Now, as to the specific arguments that were made before the discussion that goes on at length in Cottle, as I say, I'm concerned that there may be a mismatch. Why don't you move to your next point, then? Okay. Let me talk, in that case, about the third issue, the second portion of our appeal, which has to do with the district court's finding that the term employer's business under section 2201 of the collective bargaining agreement was limited strictly to the daily operation of the Sands Hotel and Casino. Now, this was a trial on stipulated facts? No. It was a trial on an agreed record. An agreed record. And it came about by way of an agreement to submit a written record to the district court, which contained all of the materials, including affidavits from witnesses  There was briefing, and that briefing included the opportunity to make objections to some of the material that the other side had made, and the district court sustained some of those objections and overruled others, and made its decision on the basis of this written record. Was the CBA in the record? Yes. Well, now let me tell you the problem I have with your argument. It starts out by saying this agreement is made and entered into on such and such a date between the Las Vegas Sands Hotel and Casino. Big block letters here and after called the employer. So isn't the employer the Las Vegas Sands Hotel and Casino? Goodbye. Isn't that the employer? And that's the first sentence of the agreement. Well, not quite. And let me tell you why. The actual operative agreement between the parties, you have to go to page 115 of our supplemental excerpts of record. And there is a memorandum agreement which adopts the provision that you're talking about. But it specifically says that first paragraph is, I think the word is modified, to reflect that as being the name and address. No, find one. Yeah, what I'm looking at is page 115 of Aptalee's supplemental excerpt of record for one appeal, an excerpt for the other, in which if you look at the bottom of that page, it says, last three lines, the first paragraph of the agreement shall be modified to reflect the correct name and address of the employer as set forth above, then talks about the effective date. The operative agreement between the parties made that simply a matter of identification. And if you then go on to look at page, at the second section that the district court relies on, and that is section 101, the reason why that's an identification item becomes clear when the employer recognizes the union as the collective bargaining representative for the employer's employees employed at its facility as indicated in the first paragraph. That's fine. We have no quarrel with that. But what it makes it clear is when these parties, very, very sophisticated negotiating parties, wanted to talk about a specific facility, they knew exactly how to do that. They did it in 101. They did it in 401, where they use the word the employer's establishment in terms of visiting the employer's establishment. They didn't do that in 2201. There is no such limiting language. And these negotiators, sophisticated labor negotiators, certainly knew how to use limiting language when they intended to use it. This decision by the district court came about as a result of a trial? It was a trial on a written record. There was no oral testimony. I know, but it was still a trial. So what standard of review? What deference is the district court entitled to with respect to this determination? Because the district court made both an unambiguous and an ambiguous finding. As to the unambiguous finding, it's de novo, because it's on the four corners of the agreement. Then it went on to say, even if the contract was ambiguous, I find the same thing and refer to two expert testimony submissions. And I used to think that, you know. And judge Arthur, what's Arthur's name? Alarcon. Yeah, disabuse me of that. He was a state court judge, just like our third colleague here on the bench. And, you know, I used to argue, look, we're an appellate court. We can look at these documents just like the district court did. Why should we give deference to the district court? It got better eyes than we do. You know, maybe, I don't know. We're looking at the same documents. Why isn't review de novo? And Arthur used to argue with me on that. You know, he finally came up with a case that said that even though the district court looks at these documents and all of that, but does so in the context of a trial, I believe our review is for clear error. He's convinced me. Now, you may convince, give me a case that says that's wrong. But I kind of think that's it. And I may be wrong. If that is true, for then the clear error with respect to the unambiguous portion of the district court's finding, it would seem to me would have to emerge from the document. Yeah, yeah. Well, maybe that's the way you get around. Yeah. And the problem that you get into here is what the district court said is I've reviewed this contract as a whole and based upon these four sections, and I haven't talked about the last one, but it's in the brief. I conclude the problem is if you actually go and read the those four sections, they make it very clear that when the parties intended to talk about a specific location, they did it. So the finding isn't supported by the evidence. Yeah, the finding isn't supported by the evidence. And you can call it substantial evidence. You can call it clear error. You can call it review based upon the text of the agreement. And with respect to the ambiguous portion of the finding, we submit, as we argue in the briefs, that what the district court relied on was quote unquote expert testimony with respect to the interpretation of an agreement that didn't supply a missing term. This isn't a situation where you put industry practice in to supply a missing term, but the attempt was industry practice to limit an unlimited term. And the problem with that is what it comes down to saying is to saying you have to make the same agreement that everybody else made. My time is up. Are there any further questions? Yeah, but we'll probably have to sort them out. No, thank you, counsel. We'll give the other side an opportunity to respond. See, now when you tell me what you think about North Pennington, I know what you're talking about. Let me begin by addressing the issue of whether arbitration is required of the implied covenant claim. Counsel argued that this contract only provides arbitration of disputes, not claims per se, but I think it's important to look at article 21.01, which defines grievances, and that's in our excerpts of record at tab 28 on page 41 at the bottom. It has a very broad definition of what a grievance is. It's a dispute or difference of opinion between the union and the employer involving meaning, interpretation, application to employees, or alleged violation of any provision of this agreement. And what we have here is they argue there's an implied provision of the agreement and that we have violated it. That is covered by the arbitration clause. Now, if you look at what arbitration is provided for on the following pages, it doesn't say you must proceed to a board of adjustment first before you can get arbitration. And our argument would be simply that they're the ones with the grievance. They're the ones with the duty to proceed to the board of adjustment first and then take it to arbitration if they don't like the results. It's not our role as a defendant to process their grievance in the first instance. More importantly, this court and the Supreme Court have made it clear that procedural questions about whether you follow the proper procedure for grievances are for the arbitrator, not for the courts to resolve. Now, on the issue of Knorr-Pennington, counsel complains that Coddle wasn't briefed by the union. It's because it wasn't decided at the point when we filed our summary judgment motion. But we briefed the Knorr-Pennington issues at length. And Coddle doesn't create new law. It merely applies existing Ninth Circuit and Supreme Court law. You briefed Knorr-Pennington at length in your motion for summary judgment? Absolutely. And the opposition I had was in your excerpt, tab 27, page whatever that was. And we included the entire opposition so the court could see how other opposition to your Knorr-Pennington argument? Exactly. And if they're contending that they covered it at oral argument, it would be incumbent on them to give you a full transcript of the oral argument. They've given you a partial transcript in which we again go to the Knorr-Pennington doctrine. It seems to me incumbent upon them at oral argument before the district court to complain that there is a sham exception applicable here. And their version of the sham exception looked very carefully at what counsel has talked about, an improper purpose for our lobbying activities. That's not the sham exception. Motivation of the person who's complaining to the government is not what the courts look at in the first instance. The sham exception applies when you have an objectively baseless appeal in an adjudicative forum. And neither side of that test has been met here. And I urge the court to consider professional real estate investors, the Supreme Court decision where the Supreme Court again says we don't go to the motivation of the person engaged in speaking. Because everybody's selfish when they're trying to influence the legislative branch or whatever it is. Finally, let me address the company's appeal of the district court's holding on the no strike clause. This court is correct in starting with the first clause of the agreement. Because even after modified as counsel indicates, it still indicates the employer is Las Vegas Sands Inc., DBA, Sands Hotel Casino. DBA shows we understood what the employer's business was. The employer's business was the Sands Hotel Casino. And if that DBA clause weren't convincing by itself, there is a side agreement concerning organizing of properties other than the Sands Hotel Casino. And that expressly acknowledges the union's right, absent this side agreement, to engage in interference with those other properties. So not only would you render the side agreement superfluous by adopting the Venetian's interpretation, but you'd actually be impeaching the language of that side agreement, which says it's to avoid picketing and other economic action directed at the employer in the event the union decides to go out and try to organize these other facilities. So the district court, after considering all the extrinsic evidence, is entitled to reference. The whole problem is that when Venetian wouldn't hire union workers, then the whole thing starts. So if you'd had an agreement with Venetian about hiring union workers in the first place, you wouldn't be, you know, if that's, if they want to read it one, you can't read it both ways, can you? I mean, exactly. They argued that the agreement terminated, that a new employer was being created. We took them at face value. I see my time is up. Thank you. Thank you, counsel. The case just argued is ordered submitted. We'll take a five-minute recess before hearing the last two cases on the calendar.
judges: Thompson, Trott, Callahan